Rebecca Aragon, Bar No. 134496
raragon@littler.com
Everett Clifton Martin, Bar No. 227357
cmartin@littler.com
LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, California 90071
Telephone: 213.443.4300
Fax No.:    213.443.4299

Attorneys for Defendant
BERRY GLOBAL, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| KALUM VAUGHNS, as an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BERRY GLOBAL, INC., a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.   21-2159<br><br>**NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL ACTION FROM STATE COURT**<br><br>[Filed concurrently with the Declaration of Rebecca Aragon, Notice of Related Cases, Notice of Interested Parties; Civil Case Cover Sheet, Disclosure Statement]<br><br>Complaint Filed: October 15, 2021 |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT, PLAINTIFF KALUM VAUGHNS, AND HIS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Defendant BERRY GLOBAL, INC. ("Berry Global") hereby removes the above-entitled action, Case No. CIVSB2129167, from the Superior Court of the State of California, County of San Bernardino, to the United States District Court for the Central District of California pursuant to 28 U.S.C. sections 1332(d) (Class Action Fairness Act of 2005), 1441 (a) and (b), and 1446 on the following grounds:

**I.    STATEMENT OF JURISDICTION**

1.    This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), which vests the United States district courts with original jurisdiction of any civil action: (a) that is a class action with a putative class of more than a hundred members; (b) in which any member of a class of plaintiffs is a citizen of a state different from any defendant; and (c) in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. §1332(D). CAFA authorizes removal of such actions in accordance with United States Code, title 28, section 1446. As set forth below, this case meets all of CAFA's requirements for removal and is timely and properly removed by the filing of this Notice.

**II.    VENUE**

2.    This action was filed in the Superior Court for the State of California in the County of San Bernardino. Further, Plaintiff was employed in San Bernardino County by Defendant. *See* Declaration of Rebecca Aragon ("Aragon Decl."), ¶ 2, **Exhibit A** (Complaint, ¶ 1, 9). Thus, venue properly lies in the United States District Court for the Central District of California pursuant to 28 U.S.C. sections 84, 1391, 1441, and 1446.

///

///

## III.    PLEADINGS, PROCESS AND ORDERS

3.      On October 15, 2021, Plaintiff, on behalf of himself and all others similarly situated, commenced this action by filing a class action complaint in the Superior Court of California, County of San Bernardino entitled *Kalum Vaughns v. Berry Global, Inc., a Delaware Corporation; and DOES 1 through 50, inclusive,* designated as Case No. CIVSB 2129167 ("Complaint").  The Complaint asserted the following causes of action on behalf of Plaintiff and the putative class against Defendant: (1) Meal Period Violations [Cal. Labor Code §§ 226.7, 512]; (2) Rest Period Violations [Cal. Labor Code § 226.7]; (3) Unpaid Minimum Wages [Cal. Labor Code §§ 1182.12, 1197]; (4) Unpaid Overtime [Cal. Labor Code §§ 510, 1198]; (5) Inaccurate Itemized Wage Statements [Cal. Labor Code § 226(a)]; (6) Unfair and Unlawful Business Practices [Cal. Bus. & Prof. Code § 17200 *et seq*.]. A true and correct copy of the Summons and Complaint are attached collectively to Aragon Decl. as **Exhibit A** pursuant to 28 U.S.C. §1446(a).

4.      On or about December 2, 2021, Plaintiff served the Complaint with its attachments on Berry Global through its agent for service of process. Among with the Summons, Complaint, and Civil Case Cover Sheet, Alternative Dispute Resolution (ADR) Information Packet; and Stipulation to Use Alternative Dispute Resolution (ADR).  True and correct copies of these documents served on Defendant are attached to the Aragon Decl. as **Exhibit A**.

5.      On December 21, 2021, Plaintiff served Berry Global, through its agent for service of process,  with the Notice of Initial Case Management Conference Order for March 1, 2022 at 9:00 a.m. The Initial Case Management Conference Order determined this case was complex according to Rule 3.400 of the California Rules of Court and placed a stay on the case until the Initial Status Conference set for March 1, 2022. Attached hereto as **Exhibit B** to the Aragon Decl. is a true and correct copy of the Initial Case Management Conference Order.

///

6.      On or about December 28, 2021, Berry Global answered the Complaint. A true and correct copy of Berry Global's Answer to the Complaint is attached to the Aragon Decl. as **Exhibit C**.

7.      To Defendant's knowledge, no further process, pleadings, or orders related to this case have been filed in the San Bernardino County Superior Court or served by any party other than as described above. (Aragon Decl. ¶ 4.)

8.      No individual defendants are named in this action. Defendant is informed and believes that none of the Doe defendants in this case have been identified or served. As such, they need not join or consent in this Notice of Removal and are to be disregarded for the purpose of removal. 28 U.S.C. § 1441(a); *Salveson v. Western States Bankcard Ass'n*, 731 F.2d 1423, 1429 (9th Cir. 1984) (named defendants not yet served in state court action need not join in notice of removal).

## IV.    TIMELINESS OF REMOVAL

9.      An action may be removed from state court by filing a notice of removal, together with a copy of all process, pleadings, and orders served on the Defendant within 30 days of service on defendant of the initial pleading. *See* 28 U.S.C. § 1446(b); *Murphy Bros., Inc. v. Mitchetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (the 30-day removal period runs from the service of the summons and complaint). Removal of this action is timely because this Notice of Removal has been filed within 30 days from December 2, 2021, when Defendant was served with the Summons and Complaint. 28 U.S.C. § 1446(b). (Aragon Decl., ¶ 2, Exh. A)

## V.    CAFA JURISDICTION

10.      CAFA grants United States district courts original jurisdiction over: (a) civil class action lawsuits filed under federal or state law; (b) where the alleged class is comprised of at least 100 individuals; (c) in which any member of a class of plaintiffs is a citizen of a state different from any defendant; and (d) where the matter's amount in controversy exceeds $5,000,000, exclusive of interest and costs.  *See* 28 U.S.C. § 1332(D). CAFA authorizes removal of such actions in accordance with 28 U.S.C. §

1446. As set forth below, this case meets each CAFA requirement for removal, and is
timely and properly removed by the filing of this Notice of Removal.

### A. Plaintiff Filed a Class Action Under State Law

11.    Plaintiff filed his action as a class action based on alleged violations of
California state law. Aragon Decl., ¶ 2, Exh. A, Complaint, ¶ 10; *see also* Caption.

### B. The Proposed Class Contains At Least 100 Members

12.    Title 28 U.S.C. § 1332(d)(5)(B) states that the provisions of CAFA do not
apply to any class action where "the number of members of all proposed plaintiff classes
in the aggregate is less than 100."

13.    Plaintiff filed his action on behalf of himself and numerous alleged classes
encompassing "all current and former non-exempt employees of Defendants in the State
of California at any time since October 15, 2017." Aragon Decl., ¶ 2, Exh. A, Complaint
¶ 10.

14.    Based on a review of Defendant's records, Defendant employed
approximately 1,215 current and former non-exempt associates in California from
October 15, 2017 until the present. Accordingly, Defendant's internal records
demonstrate that there are well over 100 putative class members in this case.

### C. Defendant Is Not A Governmental Entity

15.    Under 28 U.S.C. § 1332(d)(5)(B), CAFA does not apply to class actions
where "primary defendants are States, State officials, or other governmental entities
against whom the district court may be foreclosed from ordering relief."

16.    Defendant is not a state, state official, or other governmental entity.

### D. There Is Diversity Between At Least One Class Member and Berry Global

17.    CAFA's minimal diversity requirement is satisfied, *inter alia*, when "any
member of a class of plaintiffs is a citizen of a State different from any defendant."
28 U.S.C. §§ 1332(d)(2)(A), 1453(b). In a class action, only the citizenship of the named
parties is considered for diversity purposes, and not the citizenship of the class

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

members. *Snyder v. Harris*, 394 U.S. 332, 340 (1969). Additionally, for removal purposes, diversity must exist both at the time the action was commenced in state court and at the time of removal. *See Strotek Corp. v. Air Trans. Ass'n of Am.*, 300 F.3d 1129, 1130-1131 (9th Cir. 2002). Minimal diversity of citizenship exists here because Plaintiff and Berry Global, Inc. are citizens of different states.

### 1.    Plaintiff is a Citizen of California.

18.    For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. *See Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983); *see also LeBlanc v. Cleveland*, 248 F.3d 95, 100 (2d Cir. 2001) (citizenship determined at the time the lawsuit is filed); *see also Lundquist v. Precision Valley Aviation, Inc.*, 946 F.2d 8, 10 (1st Cir. 1991). A person's domicile is the place he or she resides with the intention to remain, or to which he or she intends to return. *See Kanter v. Warner–Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

19.    Plaintiff alleges that he was employed by Defendant. Aragon Decl., ¶ 2, Exh. A, Complaint ¶ 1. Plaintiff further alleges that all alleged wrongs occurred in Chino, California. Aragon Decl., ¶ 2, Exh. A, Complaint ¶ 9, respectively. Plaintiff then filed the present action in San Bernardino County. Defendant is informed and believes that Plaintiff, at the time this action was commenced, was and is a citizen and resident of the State of California. *See Albrecht v. Lund,* 845 F.2d 193, 194-95 (9th Cir. 1988) (finding citizenship requirement satisfied where plaintiff's complaint contained allegations consistent with diversity and plaintiff failed to contest the petition for removal); *see also Anderson v. Watts*, 138 U.S. 694, 706 ("The place where a person lives is taken to be his domicile until facts adduced establish the contrary").

### 2.    No Defendant is a Citizen of California.

20.    Conversely, Defendant is not a citizen of California. "[A] corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The Supreme Court has explained that a corporation's principal place of business is determined under the

1   "nerve center" test. *See Hertz Corp. v. Friend,* 599 U.S. 77, 80-81 (2010). Under the

2   "nerve center" test, the principal place of business is the state where "a corporation's

3   officers direct, control, and coordinate the corporation's activities." *Id.* The Supreme

4   Court further explained in *Hertz* that a corporation's nerve center "should normally be

5   the place where the corporation maintains its headquarters" and that a corporation's

6   nerve center is a "single place." *Id.* at 93.

7          21.    For diversity purposes, a corporation "shall be deemed a citizen of any

8   State by which it has been incorporated and of the State where it has its principal place

9   of business." 28 U.S.C. § 1332(c)(1). The United States Supreme Court has confirmed

10  that to determine a corporation's principal place of business, a court must apply the

11  "nerve center" test. *See Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010).  In relevant part,

12  the Court explained, as follows:

13              We conclude that 'principal place of business' is best read as
                referring to the place where a corporation's officers direct,
14              control, and coordinate the corporation's activities. It is the
                place that Courts of Appeals have called the corporation's
15              'nerve center.' And in practice it should normally be the place
                where the corporation maintains its headquarters -- provided
16              that the headquarters is the actual center of direction, control,
                and coordination, i.e., the 'nerve center,' and not simply an
17              office where the corporation holds its board meetings (for
                example, attended by directors and officers who have traveled
18              there for the occasion).

19   *Id.*, at 1041-42.

20         22.    The "nerve center" test of a corporation's principal place of business looks

21  to the place in which the corporation's executives and administrative functions are

22  located.  *Scot Typewriter Co. v. Underwood Corp.*, 170 F. Supp. 862 (S.D.N.Y. 1959)

23  (corporation's principal place of business was New York, where its management was

24  located, rather than Connecticut where most of its manufacturing was done); *see also*

25  *Diaz-Rodriguez v. Pep Boys Corp.*, 410 F. 3d 56, 60 (1st Cir. 2005) (nerve center test

26  governs where corporation has "complex" and "far flung" activities).

27         23.    Defendant is incorporated in the State of Delaware and has its principal

28  place of business and headquarters in Indiana, because its executive, operational and

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

administrative offices and functions are located in Indiana. *See Breitman v. May Co.*, 37 F.3d 562, 564 (9th Cir. 1994) (corporation is citizen of state in which its corporate headquarters are located and where its executive and administrative functions are performed); Aragon Decl., Exh. A, Complaint ¶ 2. Accordingly, citizenship of Berry Global is Delaware and Indiana.

24.     The presence of Doe defendants in this case has no bearing on diversity with respect to removal. *See* 28 U.S.C. § 1441(a) ("For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded."); *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-91 (9th Cir. 1998). Defendants "Does 1 through 50" are wholly fictitious. The Complaint does not set forth the identity or status of any fictitious defendants, nor does it set forth any charging allegation against any fictitious defendants. Thus, pursuant to 28 U.S.C. section 1441(a), the citizenship of defendants sued under fictitious names must be disregarded for purposes of determining diversity jurisdiction and cannot destroy the diversity of citizenship between the parties in this action. *See Newcombe*, 157 F.3d at 690-91.

25.     Accordingly, the named Plaintiff is a citizen of a state (California) different from Berry Global (Delaware and Indiana), and diversity exists for purposes of CAFA jurisdiction. *See* 28 U.S.C. §§ 1332(d)(2)(A), 1453.

### E. Amount in Controversy Exceeds $5,000,000[1]

26.     This Court has jurisdiction under the CAFA, which authorizes the removal of class actions in which, among the other factors mentioned above, the amount in controversy for all class members exceeds $5,000,000. 28 U.S.C. § 1332(d). "The claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds" this amount.  28 U.S.C. § 1332(d)(6).

///

---

[1] The alleged damages calculations contained herein are for purposes of removal only. Defendant denies that Plaintiff or the putative class are entitled to any relief whatsoever and expressly reserve the right to challenge Plaintiff's alleged damages in this case.

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

27.     The removal statute requires that a defendant seeking to remove a case to federal court must file a notice "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). The Supreme Court, in *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014), recognized that "as specified in §1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." The defendant's "amount-in-controversy allegation should be accepted" just as a plaintiff's amount-in-controversy allegation is accepted when a plaintiff invokes federal court jurisdiction. *Id*. at 553.

28.     Defendant denies the validity and merit of the entirety of Plaintiff's alleged claims, the legal theories upon which they are ostensibly based, and the alleged claims for monetary and other relief that flow therefrom. For purposes of removal only, however, and without conceding that Plaintiff or the putative class are entitled to any damages or penalties whatsoever, it is readily apparent that the aggregated claims of the putative class establishes, by a preponderance of evidence, that the amount in controversy well exceeds the jurisdiction minimum of $5,000,000. *See Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) (the "amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [D]efendant's liability"); *see also Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1123 (9th Cir. Cal. 2013) (a defendant "may remove when it discovers, based on its own investigation, that a case is removable.").

29.     For purposes of determining whether a defendant has satisfied the amount in controversy requirement, the Court must presume that the Plaintiff will prevail on his claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp.2d 993, 1001 (C.D. Cal. 2002) (citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994) (stating that the amount in controversy analysis presumes that "plaintiff prevails on liability."). The ultimate inquiry is what amount is put "in controversy" by plaintiff's complaint, not what defendant might actually owe. *Rippee v. Boston Mkt. Corp.*, 408

1  F.Supp.2d 982, 986 (S.D. Cal. 2005); *accord Ibarra v. Manheim Inv., Inc.* 775 F.3d

2  1193, 1198 n.1 (9th Cir. 2015) (explaining that even when the court is persuaded the

3  amount in controversy exceeds $5,000,000, defendants are still free to challenge the

4  actual amount of damages at trial because they are only estimating the amount in

5  controversy).

6        30.    Here, Plaintiff does not allege the amount in controversy in the Complaint.

7        31.    Plaintiff does allege a cause of action for a violation of the Business and

8  Professions Code §§ 17200, *et seq.* Aragon Decl., ¶ 2, Exh. A, Complaint ¶¶ 43-46.

9  Alleging an Unfair Competition Law ("UCL") violation may extend the statute of

10  limitations for Plaintiff's and the putative class' meal and rest period claims as well as

11  the overtime and minimum wage claims from three to four years from the filing of the

12  Complaint, which in this case, extends the statute of limitations to October 15, 2017.

13  *See* Cal. Bus. & Prof. Code § 17208; *Cortez v. Purolater Air Filtration Products Co.*,

14  23 Cal.4th 163, 178-79 (2000) (four-year statute of limitations for restitution of wages

15  under the UCL).

16        32.    As noted above, from October 15, 2017, to the present, approximately

17  1,215 hourly, non-exempt associates worked for Berry Global. The hourly rates, over

18  the entire alleged class period, for the purported class members Plaintiff seeks to

19  represent average $19.06.[2] During the time period from October 15, 2017 to present,

20  Berry Global paid its hourly, non-exempt employees on a bi-weekly basis. Based on the

21  available employment records, employee pay records, the time period Plaintiff has

22  placed at issue, and the number of employees at issue, Plaintiff has placed

23  approximately 103,071 workweeks in controversy.

24        33.    Plaintiff's allegations combined with the conservative calculations set

25  forth below establish that the amount in controversy for (i) failure to pay minimum

26  ///

27  _____

28  [2] The average hourly rate was calculated based on each putative class members most
recent base rate of pay and does not include additional earnings such as shift
differential pay or overtime.

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

10.

wage; (ii) failure to pay overtime; (iii) inaccurate wage statements; and attorneys' fees is at least **$7,016,784.54.**[3]

### 1.   Amount in Controversy – Failure to Pay Minimum Wage Claim

34.    Plaintiff's Third Cause of Action alleges that Berry Global failed to pay Plaintiff and class members at least minimum wage or any wage for all hours worked as a result of failing to pay off the clock work for COVID screenings and work meetings after the end of shifts. Aragon Decl., Exh. A, Complaint ¶ 29.

35.    Plaintiff seeks to recover the unpaid balance of wages allegedly owed to Plaintiff and class members plus interest, penalties, liquidated damages, attorneys' fees, expenses, and costs. Aragon Decl., Exh. A, Complaint ¶ 31.   Plaintiff does not specifically allege how often or how much time he or the other putative class members were allegedly not paid for all of their alleged off the clock work. Aragon Decl., Exh. A, Complaint ¶ 27-31.

36.    Labor Code section 1197 requires that employers pay employees at least minimum wage.  Where a UCL claim is alleged, the statutory period for recovery under California Labor Code section 1197 is calculated under a 4-year statute of limitations. *See* Cal. Civ. Proc. Code § 338(a) (setting a three-year period); Cal. Bus. & Prof. Code § 17208 (the three-year statute of limitations can be extended to four years through the pleading of a companion claim under the UCL).

37.    During the relevant time period between October 15, 2017 to the present, 1,215 employees worked approximately 103,071 workweeks during the statutory period based on employee pay records. The average hourly rate for non-exempt employees based on their base rate of pay during the class period is $19.06.

38.    Using a conservative estimate of 50 minutes of unpaid minimum wage per workweek (10 minutes per shift during a typical 5-day workweek), the amount in controversy for the unpaid wages claim totals $1,637,111.05 (103,071 workweeks x 50

---

[3] This calculation does not include Plaintiff's claims for failure to pay meal premiums at the regular rate and failure to pay rest premiums at the regular rate.

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

minutes per workweek (50/60) x $19.06).

39.    In sum, although Defendant vigorously denies Plaintiff's allegations, including the alleged damages, the amount in controversy with respect to his unpaid wage claim is at least **$1,637,111.05**.

### 2.    Amount in Controversy – Failure to Pay Overtime Claim

40.    Plaintiff's Fourth Cause of Action alleges that Berry Global failed to compensate Plaintiff and class members for all overtime hours worked, including off the clock work for COVID screenings and work meetings after the end of shifts. Aragon Decl., Exh. A, Complaint ¶ 34.

41.    Plaintiff seeks to recover the unpaid balance of wages allegedly owed to Plaintiff and class members plus interest, penalties, attorneys' fees, expenses, and costs. Aragon Decl., Exh. A, Complaint ¶ 36.  Plaintiff does not specifically allege how often or how much time he or the other putative class members were allegedly not paid for all of their alleged off the clock work. Aragon Decl., Exh. A, Complaint ¶¶ 32-36.

42.    Labor Code section 510 requires that employers pay nonexempt employees one-and-one-half times their regular rate for all hours worked in excess of eight (8) hours in a day or more than forty (40) hours in a week. Cal. Lab. Code § 510.  Where a UCL claim is alleged, the statutory period for recovery under California Labor Code section 510 is calculated under a 4-year statute of limitations.  *See* Cal. Civ. Proc. Code § 338(a) (setting a three-year period); Cal. Bus. & Prof. Code § 17208 (the three-year statute of limitations can be extended to four years through the pleading of a companion claim under the UCL).

43.    To determine the monetary amount in controversy for Plaintiff's overtime claim, the total number of alleged unpaid overtime hours worked by Plaintiff and the putative class members was multiplied by one and one-half times their respective base rates of pay in effect during the time the overtime was allegedly worked.[4]

---

[4] For the purpose of this removal, Defendant calculated the alleged unpaid overtime based on the average hourly base rate of pay. Actual damages will be higher based on Plaintiff and the putative class members regular rate of pay.

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

44.   During the relevant time period between October 15, 2017 to the present, 1,215 employees worked approximately 103,071 workweeks during the statutory period based on employees' pay records. The average hourly rate for non-exempt employees during the class period is $19.06.

45.   Using a conservative estimate of 50 minutes of unpaid overtime per workweek (10 minutes per shift during a typical 5-day workweek), the amount in controversy for the unpaid overtime claim totals $2,455,666.58 (103,071 workweeks x 50 minutes (50/60) per workweek x $19.06 x 1.5 overtime rate).

46.   In sum, although Defendant vigorously denies Plaintiff's allegations, including the alleged damages, the amount in controversy with respect to his unpaid overtime claim is at least **$2,455,666.58**.

**3.   Amount in Controversy – Wage Statement Penalties**

47.   Plaintiff's Fifth Cause of Action alleges that Berry Global failed to provide the putative class with accurate itemized wage statements in violation of California Labor Code section 226. Aragon Decl., Exh. A, Complaint ¶37-42.

48.   Plaintiff seeks to recover penalties allegedly owed to Plaintiff and class members plus interest, attorneys' fees, expenses, and costs pursuant to California Labor Code section 226. Aragon Decl., Exh. A, Complaint ¶42. Plaintiff does not specifically allege how often all of the alleged violations occurred.   Aragon Decl., Exh. A, Complaint ¶¶ 37-42.

49.   An employee seeking to recover under California Labor Code section 226(e) is entitled to recover "the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000)." Labor Code § 226(e).

50.   Plaintiff's claim for failure to furnish accurate wage statements is governed by a one-year statute of limitations.  Cal. Code Civ. Proc. § 340 (one-year statute of limitations governs claims for penalties).

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

51.    Based on Plaintiff's broad and general allegations, Plaintiff and putative class members would potentially be entitled to penalties for *each* wage statement. For purposes of removal, based on a preliminary review of employees' pay records, 777 non-exempt employees worked approximately 15,595 pay periods in California from the period October 15, 2020 to present.

52.    Assuming, *arguendo*, that each employee during the statutory period was entitled to $50 for the initial inaccurate pay stub and a $100 penalty thereafter per pay period, not to exceed $4,000, the potential amount in controversy for this claim alone is at least $1,520,650. [($50 for the initial pay period x 777 initial pay periods) + ($100 x (15,595 total pay periods – 777 initial pay periods)).]

53.    In sum, although Defendant vigorously denies Plaintiff's allegations, including the alleged damages, the amount in controversy with respect to his inaccurate wage statement is at least **$1,520,650.**

### 4.    Amount in Controversy – Claim for Attorneys' Fees

54.    Finally, Plaintiff seeks attorneys' fees and costs in his Complaint, which must also be considered in determining whether the jurisdictional limit is met. Aragon Decl., Exh. A, Complaint, Prayer for Relief.  Thus, the Court must consider attorneys' fees in determining whether the amount in controversy is met as it is well-settled that claims for statutory attorneys' fees are to be included in the amount in controversy.  *See*, *e.g.*, *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005), *cert. denied*, 127 S.Ct. 157 (2006); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("We hold that where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy.")

55.    In California, it is not uncommon for an attorneys' fee award to be twenty-five to thirty-three percent of a settlement or judgement. *See, e.g., McGuigan v. City of San Diego*, 183 Cal.App.4th 610, 638 (2010) (noting attorneys' fees paid in settlement of $1.6 million); *Vasquez v. Cal.*, 45 Cal.4th 243, 249 (2008) (noting award of $435,000

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

14.

in attorneys' fees for class claims involving failure to pay wages, liquidated damages, penalties and waiting time penalties); *Amaral v. Cintas Corp. No. 2*, 163 Cal.App.4th 1157, 1216–18 (2008) (affirming award of $757,000 in attorneys' fees plus a multiplier that equated to total fees of $1,199,500 in class case involving violations of a living wage ordinance, the California Labor Code, as well as unfair competition and contract claims); *c.f.*, *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F.Supp.2d 942, 972 (E.D. Tex. 2000) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery.").

56.    The attorneys' fees benchmark in the Ninth Circuit is 25%. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) ("We note with approval that one court has concluded that the 'bench mark' percentage for the fee award should be 25 percent.") (citation omitted); *Lo v. Oxnard Euro. Motors, LLC*, 2012 US. Dist. LEXIS 73983, *8-9 (S.D. Cal. May 29, 2012) ("The Ninth Circuit has accepted as a benchmark for an attorneys' fees award twenty-five percent of the common fund recovery.")

57.    Based on the above, the amount in controversy for alleged unpaid minimum wage, unpaid overtime, and inaccurate wage statements is conservatively **$5,613,427.63**. This subtotal exceeds $5,000,000 absent any inclusion of attorneys' fees. However, taking into account attorneys' fees at the benchmark percentage of 25% further increases the amount in controversy. The Court should therefore consider attorneys' fees of at least **$1,403,356.91** as part of the amount in controversy, for a total amount in controversy of **$7,016,784.54**

**5.    Amount in Controversy—Plaintiff's Claim for Injunctive Relief**

58.    Moreover, the Complaint also seeks injunctive relief to require Defendant to pay all allegedly outstanding wages due to Plaintiff and the putative class. Aragon Decl. Exh. A, Complaint, ¶ 46. While Defendant has not yet quantified the costs of compliance with any such injunction, this would further increase the amount in

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

15.

controversy. *In re Ford Motor Co./Citibank*, 264 F.3d 952, 958 (9th Cir. 2011), cert granted in part, 534 U.S. 1126, 123 S.Ct. 1063, 151 L.Ed.2d 966 (2002); cert. dismissed, 537 U.S. 1, 123 S.Ct. 584 (2002); see also *Pagel v. Dairy Farmers of Am., Inc.*, 986 F. Supp. 2d 1151, 1161 (C.D. Cal. 2013) (cost of complying with injunction may be aggregated for CAFA purposes).

### 6.    Summary of Amount in Controversy

59.    Plaintiff's allegations combined with the conservative calculations set forth above establish that the amount in controversy for (i) unpaid minimum wage; (ii) unpaid overtime, and (iii) inaccurate wage statements, combined with attorneys' fees, is at least **$7,016,784.54.**

| Plaintiff's Alleged Claims | Amount in Controversy Conservative Estimate |
|---|---|
| Unpaid Minimum Wage | **$1,637,111.05** |
| Unpaid Overtime | **$2,455,666.58** |
| Inaccurate Wage Statements | **$1,520,650** |
| Attorneys' Fees | **$1,403,356.91** |
| **Amount in Controversy** | **$7,016,784.54** |

60.    Removal of this action is therefore proper as the aggregate value of Plaintiff's class causes of action for unpaid minimum wage, unpaid overtime, inaccurate wage statements, and attorneys' fees is well in excess of the CAFA jurisdictional requirement of $5 million. See 28 U.S.C. § 1332(d)(2). Additionally, had Defendant factored in Plaintiff's claims for unpaid meal break premiums, unpaid rest break premiums, and the cost of compliance with any alleged injunctive relief, the additional amounts would only serve to further increase the amount in controversy. Accordingly, the $5 million jurisdictional amount requirement of the CAFA is easily met.

///

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

16.

61.     Defendant provides the foregoing calculations only to demonstrate that the amount placed in controversy by Plaintiff's Complaint easily exceeds the amount in controversy requirement of the CAFA. Defendant makes no admission of any liability or damages with respect to any aspect of this case, nor does it endorse or concede that the proffered methodology for such calculations for purposes of demonstrating that the jurisdictional minimum is met could be used in lieu of individualized inquiries or otherwise.

## **NOTICE TO PLAINTIFF AND THE STATE COURT**

62.     Concurrently with the filing of this Notice of Removal in the United States District Court for the Central District of California, written notice of such filing will be given by the undersigned to counsel for Plaintiff, David J. Lee of David Lee Law, APC, 515 S. Flower Street, Suite 1900, Los Angeles, CA 90071.  In addition, a copy of this Notice of Removal will be filed with the Clerk of the Superior Court of the State of California for the County of San Bernardino.

Dated:          December 29, 2021

LITTLER MENDELSON, P.C.

Rebecca Aragon
Everett Clifton Martin

Attorneys for Defendant
BERRY GLOBAL, INC.

4884-6010-1894.1 / 073613-1000

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

17.